﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/29/19

DOCKET NO. 190705-11022
DATE: July 30, 2019

ORDER

Entitlement to an evaluation in excess of 70 percent for post-traumatic stress disorder (PTSD) is denied.

Entitlement to a total disability evaluation due to individual unemployability (TDIU) is denied.

FINDINGS OF FACT

1. The Veteran’s service-connected PTSD manifests with occupational and social impairment with deficiencies in most areas but not total impairment, and his symptoms are contemplated in the schedular rating criteria.

2. The Veteran’s service connected disabilities do not prevent him from securing and maintaining a gainful occupation.

CONCLUSIONS OF LAW

1. The criteria for entitlement to an evaluation in excess of 70 percent for service-connected PTSD have not been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(b)(1); 4.130, Diagnostic Code 9411.

2. The criteria for entitlement to TDIU have not been met. 38 U.S.C. §§ 5107, 5110; 38 C.F.R. § 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran’s long and distinguished career included active air service from June 1953 to August 1984. The Veteran, who flew more than 200 combat missions during multiple periods of service in the Republic of Vietnam. He is the recipient of many medals and awards including the Distinguished Service Medal, Legion of Merit, and Distinguished Flying Cross with three Oak Leaf Clusters.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review.

A March 2019 rating decision increased the Veteran’s rating for PTSD from 50 percent to 70 percent effective August 31, 2017. In July 2019, the Veteran submitted his Decision Review Request (Board Appeal), selecting direct review by a Veterans Law Judge. Because the Veteran requested direct review by the Board without submission of additional evidence and without a Board hearing, the Board’s decision is based on a review of the evidence of record at the time of the March 2019 rating decision. See 38 C.F.R. § 20.301. 

1. Entitlement to an Evaluation in Excess of 70 Percent for PTSD

The Veteran is seeking an evaluation in excess of 70 percent for his service-connected PTSD. The Veteran also contends that he is entitled to an extraschedular evaluation. 

A. Schedular Evaluation in Excess of 70 Percent for PTSD

The Veteran’s PTSD is evaluated under 38 C.F.R. § 4.130, Diagnostic 9411. The Veteran’s current evaluation is 70 percent. A 70 percent evaluation is assigned when a veteran’s PTSD causes occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or an inability to establish and maintain effective relationships.

A 100 percent rating is assigned when a veteran’s PTSD causes total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; danger of hurting self or others; intermittent inability to perform activities of living (including maintenance of minimal hygiene); disorientation to time or place; or, memory loss for names of close relatives, occupation, or own name. 38 C.F.R. § 4.130, Diagnostic Code 9411.

The Board concludes that the preponderance of the evidence shows that the Veteran’s PTSD does not manifest as total occupational and social impairment. A November 2017 VA examination notes the Veteran’s reports of conflict in his marriage, depression, and lack of friendships. The Veteran also reported that he had a temper and was prone to angry outbursts. However, a higher rating is not warranted because the severity of the Veteran’s symptoms did not rise to the level that would warrant a 100 percent evaluation. For instance, the Veteran and his spouse have been married for more than 30 years, and he described his relationship with his son and two step-children as very good. The Veteran also reported that he was independent and able to complete his tasks of daily living and self-care. The Veteran denied a history of suicidal or homicidal ideation, and he does not present a persistent danger to himself or others. The Veteran also denied visual or auditory hallucinations.

VA treatment records similarly indicate that the severity of the Veteran’s PTSD does not warrant a 100 percent evaluation. January 2018 VA treatment records note no overt signs of depression or anxiety, and a depression screen noted nightmares but was negative overall for depression. January 2019 VA treatment records align with the Veteran’s statements regarding his relationships with his children, documenting his reports of near-monthly trips from the eastern United States to the Mountain West to visit them and his five grandchildren. The Veteran also reported that he is managing his PTSD symptoms “on his own,” suggesting they are not of a severity to warrant a 100 percent evaluation. 

In light of the foregoing, the Board concludes that an evaluation in excess of 70 percent is not warranted for the Veteran’s service-connected PTSD.

Finally, in correspondence received in July 2019, the Veteran raised the issue of entitlement to an extraschedular rating for PTSD. The Board does not have authority to reach the extraschedular rating issue/question in the first instance. The Veteran may raise this theory again by filing a supplemental claim within one year after the Board decision.

2. Entitlement to TDIU

Under certain circumstances, the claim for an increased rating for a service-connected disability includes a claim of entitlement to a total disability rating based on individual unemployability. See Rice v. Shinseki, 22 Vet. App. 447 (2009). The Veteran’s July 2019 decision review request expressly sought a 100 percent evaluation based on the Veteran’s inability to get a job due to his age. 

VA will grant TDIU when the evidence shows that the Veteran is precluded, due to service-connected disabilities, from obtaining and maintaining any form of gainful employment consistent with education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16. Total disability ratings for compensation may be assigned where the schedular rating is less than total when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that: (1) if there is only one such disability, the disability shall be ratable at 60 percent or more, or (2) if there are two or more service-connected disabilities at least one must be rated at 40 percent or more and the combined rating must be 70 percent or more. 38 C.F.R. § 4.16(a). 

From August 31, 2017, the Veteran’s combined evaluation is 80 percent, and he is service connected for the following disabilities: PTSD (70 percent), residuals of prostate cancer (40 percent), hearing loss (10 percent), sacr related to an appendectomy (0 percent), a fractured mandible (0 percent), and erectile dysfunction (0 percent). The Veteran’s combined 80 percent evaluation and his 70 percent evaluation for PTSD satisfy the schedular criteria for TDIU. See 38 C.F.R. § 4.16. Thus, the question for the Board is whether the Veteran’s service connected disabilities render him unable to secure or pursue a substantially gainful occupation. 

As an initial matter, the Board notes the Veteran’s contentions that he cannot work because of his age. It is certainly appreciated that the Veteran’s age of 89 years makes it difficult to seek out, obtain, and maintain employment. However, the Board must determine his entitlement to TDIU “without regard to [his] age.” See Pratt v. Derwinski, 3 Vet. App. 269, 272 (1992).

The weight of the evidence shows that the Veteran’s service-connected disabilities do not prevent him from securing and/or following a substantially gainful occupation. The examiner responsible for the November 2017 VA examination concluded that he Veteran’s PTSD symptoms were “not likely to impact the Veteran’s ability to function in an employment setting.” The examiner based this conclusion on the Veteran’s maintaining employment in senior level positions in salaried and unpaid work until his retirement in 2017. While TDIU is not a medical determination but is instead “to be awarded based on the ‘judgment of the rating agency,’” see Floore v. Shinseki, 26 Vet. App. 376, 381 (2013), the Board finds the examiner’s conclusion and reasoning highly probative. The Veteran’s exemplary employment history in senior level positions with prominent organizations belies any contention that he is unable to secure or follow a substantially gainful occupation due to his service-connected disorders, which have been present since the Veteran’s service in the Republic of Vietnam during the Vietnam conflict. Accordingly, a TDIU evaluation is not warranted here. 

 

MICHAEL A. HERMAN

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Douglas M. Humphrey, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.